UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| US BANK, NA as trustee for SASCO Aames Mortgage Loan Trust, Series 2003-1, | ) ) ) ) ) | No. 04 C 1211 |
| Plaintiff, | ) ) | Judge Marvin E. Aspen |
| v. | ) ) ) | Magistrate Judge |
| WILLIE C. MATTHEWS, | ) ) | Arlander Keys |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**Background & Procedural History**

On June 27, 2003, Willie C. Matthews executed an adjustable rate note secured by a piece of property located at 8217 South East End, in Chicago, Illinois. The note, made by Aames Funding Corporation DBA Aames Home Loan, required Mr. Matthews to pay $913.70 a month, for two years, at which time the interest rate (and therefore the monthly payment amount) was subject to change. The note provided that, if Mr. Matthews failed to pay the full amount of each monthly payment on the date it was due, he would be in default. By October 2003, just a few months after he executed the mortgage note, Mr. Matthews was in default. And, on February 18, 2004, US Bank, National Association as Trustee for SASCO Aames Mortgage Loan Trust, Series 2003-1 (hereinafter "US Bank"), filed this mortgage foreclosure action, seeking foreclosure on the note secured by the 8217 S. East End Avenue

property.

When the special process server was unable to obtain service on Mr. Williams at that address, US Bank asked the Court for permission to effect service by publication. In support of that motion, US Bank submitted an affidavit signed by the process server, whose name is Craig A. Caruso, stating that, on March 8, 2004, he went to the address listed in the complaint, 8217 South East End Avenue, but that he was "unable to locate/make contact with the defendant at the service address provided." See Return of Service attached to Affidavit in Support of Petition for Publication. Mr. Caruso then detailed the additional steps he took to locate Mr. Williams – he checked the social security death index, he used databases, including credit headers, motor vehicle, license and voter registration records, he checked court records (including judgments and bankruptcy records), phone listings, property ownership records, and tax lien records, and he checked postal authorities). In his affidavit, Mr. Caruso also stated that the property at 8217 South East End Avenue was "vacant and in the process of being rehabbed"; he indicated that the property had been vacant for "approximately 4-5 months" and that the neighbors had no information on Mr. Williams. Id.

On April 20, 2004, the Court granted US Bank's motion for publication. As a result, an Order directing Mr. Williams to answer, or otherwise appear in response to, the complaint by June

15, 2004 was published in the Daily Law Bulletin once a week for six consecutive weeks. When Mr. Matthews failed to appear in response to that Order, US Bank moved for a default order and default judgment, and on July 27, 2004, the Court granted those motions and entered judgment of foreclosure and sale; at the same time, the Court appointed a special commissioner to handle the sale of the property.

On November 12, 2004, the bank mailed a Notice of Sale to Mr. Matthews at the 8217 South East End Avenue address; the notice indicated that the property was to be sold at auction on December 8, 2004. On that date, Mr. Matthews filed a petition seeking relief under Chapter 7 of the Bankruptcy Code; because of that petition, the sale of the property did not proceed.

After obtaining the necessary authority from the Bankruptcy Court, the bank once again scheduled the auction sale of the property, this time for March 24, 2005, and the bank sent another Notice of Sale to Mr. Matthews at the 8217 South East End Avenue address. Notice of the sale was also published for four straight weeks in both the Chicago Daily Law Bulletin and the Chatham-Southeast Citizen, a weekly newspaper covering the particular Chicago neighborhood in which the subject property is located. Again, on the day of the planned sale, Mr. Matthews filed for relief in the Bankruptcy Court, this time under Chapter 13 of the Code.

After again seeking the appropriate relief and authority from the Bankruptcy Court, the bank finally sold the foreclosed property on May 23, 2005. The successful bidder was US Bank, which acquired the property for $110,550.00, a few thousand shy of the remaining principal balance on Mr. Matthews' note with Aames. On June 28, 2005, the district court signed an Order approving the sale of the property and granting possession to the bank. As a result, on August 1, 2005, the Sheriff's Office sent Mr. Matthews a notice, at the 8217 South East End Avenue address, advising him that the court had ordered him evicted from the property.

On August 16, 2005, Mr. Matthews filed a *pro se* motion to stay his eviction. In his motion, he claims that he received no notice of the sale until August 10, 2005, and that he received no notice of the eviction until August 8, 2005. He states that, if he had known what was going on, he "could have responded with an attorney." Significantly, Mr. Matthews does not say in his motion that he paid the money he owed under the mortgage; instead, he states that he had gotten a job and "saved enough money to set up a plan to repay all back money due . . . ." Motion, p. 1.

Mr. Matthews subsequently retained counsel, and his attorney filed a "Motion for Leave to Amend Appearance to Reflect Special and Limited, to Quash Service of Process and to Vacate and Set

4

Aside Default Judgment of Foreclosure Sale and Quash the Commissioner's Certificate of Sale and Deed and Order of Possession and Amended Motion to Stay." In that motion, Mr. Matthews' attorney argues that Mr. Matthews is not subject to personal jurisdiction in this court because he was never served with summons, that substituted service is ineffective for lack of due diligence, and that Mr. Matthews has continuously lived at the subject property since July 1, 2003. Along with the motion, counsel filed part of an affidavit[1] from Mr. Matthews, in which he attests that he moved into the house located at 8217 South East End Avenue on July 1, 2003, that he installed telephone service promptly upon moving in, that the house was rehabbed before he moved in and that he has done no work on the house since moving in, and that there would have been nothing on the outside of the house to suggest that it was vacant or that rehab work was ongoing. Judge Aspen referred the motion to this Court, and both sides have now had an opportunity to brief the issues.

## Discussion

Mr. Matthews argues that the judgment entered to date in this case is void because he is not subject to personal

---

[1] Exhibit A of the motion is just one page, and it includes paragraphs numbered 9 through 12; the Court assumes that there is another page to this affidavit, but it is missing from both the original filed with the Court and the Judge's Copy. As of this writing, counsel for Mr. Matthews had not responded to a request from the Court to provide any missing pages.

5

jurisdiction in this court. Specifically, Mr. Matthews argues that he was never personally served with a summons and copy of the complaint, and that the method of service attempted by the bank here - namely, service by publication - fails to satisfy due process concerns. The Court cannot agree.

Insofar as is relevant here, Rule 4 of the Federal Rules of Civil Procedure provides that, unless otherwise provided by federal law, service upon an individual may be effected either personally (by delivering a copy of the summons and complaint to the individual personally or by leaving copies at the person's house with "some person of suitable age and discretion then residing therein"), or in a manner consistent with the law of the state in which the district court is located. Fed. R. Civ. P. 4(e)(1), (2). By federal statute,

> [i]n an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.
>
> Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

28 U.S.C. §1655.

Similarly, Illinois law provides that, "[w]henever, in any

action affecting property . . . plaintiff or his attorney shall file, at the office of the clerk of the court in which the action is pending, an affidavit showing that the defendant . . . on due inquiry cannot be found . . . and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending." 735 ILCS 5/2-206. And the United States Supreme Court has held that service of process by publication can satisfy due process, as have the courts of both this Circuit and the State of Illinois. *See, e.g., Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988)(citing *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)); *Schultz v. Walker*, 130 F.2d 907, 909 (1942)(collecting cases); *First Bank & Trust Co. of O'Fallon, Illinois v. King*, 311 Ill. App. 3d 1053, 1058, 726 N.E.2d 621, 624 (Ill. App. Ct. 2000).

Here, the bank attempted to serve a summons and complaint on Mr. Matthews at his only known address – indeed, at the address at which he claims to reside. When the special process server could not find Mr. Matthews, or anyone else, at that address, he attempted to ascertain whether Mr. Matthews might have some other address – he checked the social security death index, he checked credit reports, motor vehicle, license and voter registration

7

databases, he checked court records (including judgments and bankruptcy records), he checked phone listings, property ownership records, and tax lien records, and he checked postal records. In addition, because the property appeared to the process server to be vacant, the process server attempted to obtain information about the residence from the neighbors; according to the process server's affidavit, the neighbors confirmed that the property had been vacant for several months. Regardless of what Mr. Matthews might think, all of these efforts would constitute "due inquiry." And, after making such efforts – still without success – the bank was justified and reasonable in resorting to service by publication.

In addition to finding that publication was an appropriate means of service here, the Court finds that the publication here was accomplished as required under the law. The bank has submitted records showing that an Order directing Mr. Matthews to answer or otherwise appear in response to the mortgage foreclosure complaint did, in fact, run in the Chicago Daily Law Bulletin on May 4, 2004; May 11, 2004; May 18, 2004; May 25, 2004; June 1, 2004; and June 8, 2004. The record also shows that, despite this, Mr. Matthews still failed to appear.

In his motion, Mr. Matthews essentially asks the Court to believe that he had no inkling of the foreclosure proceedings until August 8, 2005, when he received his eviction notice from

the Sheriff. The Court declines to do so. For one thing, the notices of sale, which were sent out prior to the December 8, 2004 sale date and the March 24, 2005 sale date, were sent to the 8217 South East End Avenue address, at which Mr. Matthews claims to have resided. And there is nothing in the record to suggest that these notices were returned or undeliverable. On the contrary, the fact that Mr. Matthews just happened to file for Bankruptcy protection on the exact day on which his property was set to be sold – not once, but twice – is strong evidence that he did receive the notices of sale.

More importantly, the records from Mr. Matthews' bankruptcy proceedings show that he knew about the foreclosure action long before the property was even sold. Mr. Matthews filed his first Bankruptcy petition on December 8, 2004. And just a week later, on December 15, 2004, US Bank filed a motion in that bankruptcy case, seeking relief from the automatic stay provision of Rule 4001(a)(3) of the Rules of Bankruptcy Procedure. Judge Hollis, the Bankruptcy Judge to whom Mr. Matthews' Chapter 7 petition was assigned, granted that motion on January 13, 2005, and a certificate of service attached to the Order shows that it was sent to Mr. Matthews at the 8217 South East End Avenue address. The Order states that the automatic stay provision was modified "to allow US Bank . . . to proceed with foreclosure, eviction or any other action to preserve and enforce its rights with regard

9

to the property commonly known as 8217 South East End Avenue, Chicago, Illinois."

The same scenario played out in connection with Mr. Matthews' second bankruptcy petition. After he filed his Chapter 13 petition on March 24, 2005, US Bank filed a motion for relief from the automatic stay, and Judge Doyle, the judge to whom Mr. Matthews' Chapter 13 petition was assigned, granted the motion, and entered an order allowing US Bank "to proceed with foreclosure, eviction or any other action to preserve and enforce its rights with regard to the property commonly known as 8217 South East End Avenue, Chicago, Illinois." Again, the court records show that a copy of the order was sent to Mr. Matthews at the 8217 South East End address. Based upon these records, the Court finds Mr. Matthews' representations in support of his motion to stay his eviction to be simply unbelievable. There can be no question that Mr. Matthews knew about the mortgage foreclosure action by – at the very latest – January 13, 2005, five months before the property was ever sold. Yet he did not appear in the foreclosure action. In fact, he did absolutely nothing for another eight months. Now, he asks the Court to stay his eviction based upon his assertion that he knew nothing about the foreclosure, the sale, or the eviction until August 2005, and that, if he had known what was going on, he would have come to court with an attorney.

Finally, although Mr. Matthews claims that he has resided at the 8217 South East End Avenue address continuously since July 1, 2003 - thereby suggesting that the special process server was wrong, was lazy or is otherwise unworthy of belief - the court filings in the bankruptcy matters do not support his claim.  In the Statement of Financial Affairs Mr. Matthews filed in connection with his Chapter 7 petition, he included the 8217 South East End Avenue property as "rental property" under a section listing his businesses, and noted that the business lasted from July 1, 2003 through February 2004.  This representation would certainly be consistent with the special process server's statement that the property appeared to be vacant on March 8, 2004.  And it is inconsistent with Mr. Matthew's claim that he lived in the house from July 1, 2003 through the date of his affidavit in August 2005.

Interestingly, Mr. Matthew's Statement of Financial Affairs also discloses that, on October 26, 2004, he had another property that was either repossessed, sold at a foreclosure sale, transferred in lieu of foreclosure or returned to the seller, which might suggest that he has been through this game before, making his protestations of ignorance all the more incredible.

At the end of the day, based upon the record before it, the Court is satisfied that US Bank's service on Mr. Matthews was appropriate and consistent with due process.  The bank previously

persuaded Judge Aspen that service by publication was warranted, and nothing in Mr. Matthews' submissions persuades the Court that Judge Aspen's earlier rulings should be upset.

## Conclusion

For the reasons explained above, the Court denies Mr. Matthews the relief he seeks in both his motion to stay [Docket #18] and his amended motion [Docket #22].

Dated: October 20, 2005

E N T E R:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge